Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| GENERA PR LLC<br><br>Parte Recurrente<br><br>v.<br><br>NEGOCIADO DE ENERGÍA DE PUERTO RICO DE LA JUNTA REGLAMENTADORA DE SERVICIO PÚBLICO, GOBIERNO DE PUERTO RICO<br><br>Parte Recurrida | TA2025RA00015 | Revisión Judicial de Decisión Administrativa procedente del Negociado de Energía de Puerto Rico<br><br>Caso núm.: NEPR-MI-2023-0004<br><br>Sobre: Determinación sobre *Final Resolution and Order on Genera´s Fuel Optimization Plan y Resolutioin on Genera´s January 23, 2025 Motion* |

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Campos Pérez y la Jueza Trigo Ferraiuoli[1].

Trigo Ferraiuoli, jueza ponente.

### SENTENCIA

En San Juan, Puerto Rico, a 11 de junio de 2026.

Comparece Genera PR LLC (en adelante, Genera o el Recurrente) y nos solicita que revoquemos la resolución y orden titulada *Final Resolution and Order on Genera´s Fuel Optimization Plan*, que emitió y notificó el Negociado de Energía de Puerto Rico (en adelante, Negociado o Recurrido) el 22 de noviembre de 2024. Igualmente, solicitó la revisión de la resolución intitulada *Resolution on Genera´s January 23, 2025 Motion*, emitida y notificada por el Negociado el 23 de mayo de 2025. Mediante la primera *Resolución,* el Negociado rechazó, sin perjuicio, atender una iniciativa de optimización de combustible propuesta por Genera. Inconforme,

---

[1] Véase Orden Administrativa OATA-2025-170 en la que se designa a la Jueza Trigo Ferraiuoli en sustitución del Juez Marrero Guerrero.

Genera solicitó una reconsideración el 23 de enero de 2025, que denegó el Negociado en la *Resolución* del 23 de mayo de 2025.

El 21 de agosto de 2025, sin someterse a la jurisdicción de este foro intermedio, el Negociado presentó una *Moción de Desestimación* del recurso de epígrafe por supuesta falta de jurisdicción.

Así, con el beneficio de su comparecencia, resolvemos.

## I.      *Trasfondo fáctico y procesal*

El 24 de enero de 2023, la Autoridad de Energía Eléctrica de Puerto Rico (en adelante, PREPA), la Autoridad para las Alianzas Público-Privadas (en adelante, Autoridad o AAPP) y Genera suscribieron un contrato de alianza titulado *Puerto Rico Thermal Generation Facilities Operation and Maintenance Agreement* (en adelante, Generation OMA). Mediante este pacto, las partes acordaron que Genera asumiría la operación y mantenimiento de las instalaciones de generación térmica legadas por PREPA.[2]

Mediante este acuerdo, Genera se obligó a desarrollar y someter a la Autoridad un Plan de Optimización de Combustible o el *Fuel Optimization Plan* (en adelante, FOP, por sus siglas en inglés), para reducir costos. Dicho plan debía ser sometido en un plazo de noventa (90) días, desde la fecha de efectividad del contrato.[3]

---

[2] Véase, Entrada 3 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC), caso núm. NEPR-MI-2023-0004.

[3] *Id.* La Sección 4.2 (t) del Generarion OMA dispone como sigue:

Fuel Optimization Plan. As soon as reasonably practicable, but not less than ninety (90) days following the Effective Date, Operator shall develop and submit to Administrator a plan intended to take effect from the Service Commencement Date and describing the Fuel Cost Savings Initiatives and outlining the expected methods and estimated fuel savings to be achieved during the Term of the Agreement (the "Fuel Optimization Plan"). Administrator, acting reasonably, shall provide Operator comments on the appropriateness of the proposed Fuel Optimization Plan and recommend any changes or modifications it believes are necessary or appropriate. Within thirty (30) days following receipt of Administrator's comments, if any, or the end of forty-five (45) days following Administrator's receipt of the proposed Fuel Optimization Plan, if Administrator has no comments, Operator shall submit to PREB for its review and approval the revised Fuel Optimization Plan, incorporating the feedback from Administrator. If Operator disagrees with any comment from Administrator, Operator will deliver with the revised Fuel Optimization Plan a written statement describing such disagreement, and the parties will meet within five (5) Business Days to seek to resolve any such disagreement and obtain Administrator's approval of a Fuel Optimization Plan that is acceptable to Operator. Operator shall update the Fuel Optimization Plan (A) on an annual basis, (B) as necessary pursuant to Section

Con el fin de determinar el ahorro, Genera debe detallar en el FOP las iniciativas para reducir los costos de combustible, describir el método para lograrlo y los ahorros estimados.[4] El plan sometido debe ser acordado entre Genera y la Autoridad, mientras que el Negociado debe emitir su aprobación para su posterior implementación.[5] El contrato también dispone que después de aprobadas las iniciativas presentadas, Genera sometería anualmente un *Informe de Incentivos y Penalidades*, en el que podía reclamar el pago de una compensación por los ahorros logrados al amparo del FOP.[6]

Conforme a los acuerdos descritos, el 15 de septiembre de 2023, Genera presentó un borrador del FOP que supuestamente había sido acordado con la Autoridad.[7] Por entender que el documento sometido no cumplía con las exigencias del contrato, el Negociado emitió una *Resolución y Orden* en la que solicitó información adicional a Genera.[8]

Durante el trámite de evaluación, Genera revisó y modificó en varias ocasiones el plan sometido. Así, el 8 de enero de 2024, Genera presentó *Motion Regarding the Revised Fuel Optimization Plan and Request for Confidential Treatment with Supporting Memorandum of Law*, en la que informó que el 4 de enero de 2024 presentó un FOP revisado ante la Autoridad y que este se encontraba bajo su evaluación y consideración.

El 10 de enero de 2024, el Negociado emitió una *Resolución y Orden* en la que ordena a Genera a que someta el FOP revisado del

---

2.3(c) (*Term – Reduction*) and (C) upon any order from PREB or reasonable request from Administrator. Notwithstanding anything to the contrary herein, Operator's submission of the Fuel Optimization Plan to the Administrator shall be sufficient to satisfy this Operator Service Commencement Date Condition; provided that, for the avoidance of doubt, the Fuel Optimization Plan shall not be effective until approved by Administrator and PREB pursuant to this Section 4.2(t) (*Operator Responsibilities – Fuel Optimization Plan*).
[4] *Id.*
[5] *Id.*
[6] *Id.*, Sección 7.1 (c)(ii) del Generation OMA.
[7] Apéndice de Genera, Entrada 13, págs. 17-18.
[8] *Id.*, págs. 63-65.

4 de enero, después de que reciba los comentarios de la Autoridad. En cumplimiento con lo ordenado, el 21 de febrero de 2024 Genera sometió el FOP revisado y solicitó su evaluación y aprobación. Además, notificó que el 16 de febrero del mismo año la Autoridad aprobó el FOP actualizado sujeto a ciertas condiciones.

Así las cosas, el 15 de abril de 2024, el Negociado emitió una *Resolución y Orden* mediante la cual solicitó a Genera información adicional. Además, le requirió que resolviera cualquier discrepancia que tuviera con la Autoridad, para que presentara un FOP final.[9] El 29 de abril de 2024 Genera presentó el *Fuel Optimization Plan* aprobado por la Autoridad.[10]

Después del correspondiente examen, el 22 de noviembre de 2024 el Negociado emitió una *Resolución y Orden* en la que aprobó las Iniciativas Núm. 1, 2 y 4 que incluyó Genera en el FOP. No obstante, rechazó, sin perjuicio, las Iniciativas Núm. 3, 5, 6, 7 y 8.

El 23 de enero de 2025, Genera solicitó reconsideración de dicha *Resolución y Orden.* Sin embargo, el Negociado denegó la solicitud mediante *Resolución* emitida el 23 de mayo de 2025.

Inconforme con lo resuelto, Genera presentó el recurso de revisión de epígrafe en el que señaló la comisión de los siguientes tres errores:

A. ERRÓ EL NEGOCIADO DE ENERGÍA AL DENEGAR LA INICIATIVA NÚM. 8 DEL *FUEL OPTIMIZATION PLAN* DEBIDAMENTE APROBADA POR LA AUTORIDAD PARA LAS ALIANZAS PÚBLICO-PRIVADAS COMO ENTIDAD RESPONSABLE DE LA SUPERVISIÓN DEL LGA OMA, SIN FUNDAMENTO ALGUNO Y TRAS UNA DILACIÓN INJUSTIFICADA QUE PRIVÓ A GENERA DE LA OPORTUNIDAD DE EJERCER SUS DERECHOS CONTRACTUALES RESPECTO A INCENTIVOS DURANTE EL AÑO FISCAL CORRESPONDIENTE, EN CONTRAVENCIÓN DE LA POLÍTICA ENERGÉTICA DE PUERTO RICO Y EXCEDIENDO LOS PODERES CONFERIDOS AL NEGOCIADO POR SU LEY HABILITADORA.

B. ERRÓ EL NEGOCIADO DE ENERGÍA AL ARROGARSE INDEBIDAMENTE LA FACULTAD DE INTERPRETAR LAS DISPOSICIONES CONTRACTUALES DEL LGA OMA Y DECLARAR QUE GENERA NO TIENE DERECHO A INCENTIVO ALGUNO BAJO DICHO CONTRATO, USURPANDO ASÍ LAS FACULTADES EXCLUSIVAS DE LA AUTORIDAD PARA LAS ALIANZAS PÚBLICO-

---

[9] *Id.*, Entrada 15, págs. 595-602.
[10] *Id.*, págs. 642-795.

PRIVADAS PARA LA APROBACIÓN DE INCENTIVOS CONFORME A LA SECCIÓN 7.1(C) DEL LGA OMA Y VIOLENTANDO LA DESIGNACIÓN EXPRESA DEL ARTÍCULO 15 DE DICHO CONTRATO QUE RESERVA LA INTERPRETACIÓN CONTRACTUAL EXCLUSIVAMENTE A LOS TRIBUNALES, CONSTITUYENDO TODO ELLO UNA ACTUACIÓN ULTRA VIRES QUE EXCEDE LA AUTORIDAD REGULATORIA DEL NEGOCIADO.

C. ERRÓ EL NEGOCIADO DE ENERGÍA AL NOTIFICAR DEFECTUOSAMENTE LA RESOLUCIÓN Y ORDEN DEL 22 DE NOVIEMBRE DE 2024, OMITIENDO LAS ADVERTENCIAS REQUERIDAS POR LAS SECCIONES 3.14 Y 3.16 DE LA LEY DE PROCEDIMIENTO ADMINISTRATIVO UNIFORME DEL GOBIERNO DE PUERTO RICO SOBRE EL DERECHO DE GENERA A SOLICITAR RECONSIDERACIÓN ANTE LA AGENCIA Y REVISIÓN JUDICIAL ANTE ESTE TRIBUNAL, ASÍ COMO LOS TÉRMINOS APLICABLES PARA EJERCITAR DICHOS REMEDIOS, VIOLANDO EL DEBIDO PROCESO DE LEY QUE COBIJA A LA RECURRENTE.

## II. Exposición del Derecho

### A. Ley Núm. 57 de 27 de mayo de 2014, *Ley de Transformación y Alivio Energético*

La *Ley de Transformación y Alivio Energético* tiene como fin la creación e implementación de una reforma energética que provea un servicio eléctrico adecuado, confiable, seguro y eficiente.[11] Por virtud de dicho estatuto, se creó el Negociado de Energía de Puerto Rico[12] como un ente independiente especializado, encargado de reglamentar, supervisar y hacer cumplir la política pública energética del Gobierno de Puerto Rico.[13]

Entre otras competencias, el Negociado tiene jurisdicción primaria exclusiva sobre los casos y controversias en los que se plantee el incumplimiento con la política pública energética de Puerto Rico, así como los casos y controversias en los que se alegue algún incumplimiento con cualquiera de los mandatos establecidos en la *Ley de la Autoridad de Energía Eléctrica de Puerto Rico[14]* y los

---

[11] Exposición de Motivos de la Ley Núm. 57-2014 (22 LPRA sec. 1051 *et seq.*).

[12] También conocido como la Comisión de Energía.

[13] Véase, Exposición de Motivos de la Ley Núm. 57-2014, *supra*; Art. 6.3. de la Ley Núm. 57-2014 (22 LPRA sec. 1054b).

[14] Ley Núm. 83 de 2 de mayo de 1941, según enmendada, (22 LPRA sec. 191 *et seq.*).

dispuestos en la *Ley de Política Pública Energética de Puerto Rico*[15] sobre el servicio eléctrico o en relación con asuntos energéticos.[16]

A su vez, el Artículo 6.20 de la Ley Núm. 57-2014, *supra*, establece que,

> Todos los procesos para los cuales esta Ley no provea disposiciones particulares, se regirán por la Ley 38-2017, según enmendada, conocida como "Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico". En virtud de ello, la citada Ley 38-2017 gobernará los procedimientos para la *adopción de reglamentos*, *los procedimientos adjudicativos*, *la revisión judicial*, *el procedimiento para la concesión de certificaciones*, *franquicias*, *querellas de usuarios y entre compañías de energía* y *los procedimientos para inspecciones*. [...].[17]

También, la referida ley dispone que, conforme a la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, en adelante, la LPAU, "las ***decisiones*** o ***resoluciones finales*** de las comisiones en ***procedimientos adjudicativos*** estarán sujetas a revisión por el Tribunal de Apelaciones de Puerto Rico [...]".[18]

### i. Órdenes y resoluciones bajo la LPAU

La LPAU define una orden o resolución como "cualquier decisión o acción agencial de aplicación particular que *adjudique derechos u obligaciones* de una o más personas específicas, *o que imponga penalidades o sanciones administrativas* excluyendo órdenes ejecutivas emitidas por el Gobernador".[19]

También, define la orden o resolución parcial como "la acción agencial que adjudique algún derecho u obligación que no ponga fin a la controversia total sino a un aspecto específico de la misma".[20]

No obstante, la Sección 3.14 de la LPAU describe en qué consiste una orden o resolución final como sigue:

> Una orden o resolución final deberá ser emitida por escrito dentro de noventa (90) días después de concluida la vista o después de la presentación de las propuestas

---

[15] Ley Núm. 17-2019, según enmendada, (22 LPRA sec. 1141 *et seq.*).
[16] Véase, Art. 6.4 (a) (3) (4) de la Ley Núm. 57-2014 (22 LPRA sec. 1054c (a) (3) (4)).
[17] (Énfasis suplido). 22 LPRA sec. 1054s.
[18] (Énfasis suplido). Art. 6.5. (c) de la Ley Núm. 57-2014 (22 LPRA sec. 1054d).
[19] (Énfasis suplido). Sección 1.3(g) de la Ley Núm. 38-2017 (3 LPRA sec. 9603).
[20] Sección 1.3(h) de la Ley Núm. 38-2017 (3 LPRA sec. 9603).

determinaciones de hechos y conclusiones de derecho, a menos que este término sea renunciado o ampliado con el consentimiento escrito de todas las partes o por causa justificada.

La orden o resolución deberá incluir y exponer separadamente determinaciones de hecho si éstas no se han renunciado, conclusiones de derecho, que fundamentan la adjudicación, la disponibilidad del recurso de reconsideración o revisión según sea el caso. [...].[21]

A tenor con lo anterior, nuestro Tribunal Supremo define una orden o resolución final como decisiones que ponen fin al caso ante la agencia y que tienen efectos sustanciales sobre las partes.[22] Por consiguiente, "una 'orden o resolución final' tiene que ser aquella que pone fin a los procedimientos en un foro determinado".[23] Así pues, solamente están sujetas a revisión judicial las órdenes o resoluciones finales que hayan resuelto todas las controversias y que no dejen ningún asunto pendiente para resolver en el futuro.[24]

Una parte que no haya sido favorecida por una orden o resolución final de una agencia y que haya agotado todos los remedios provistos por la agencia podrá:

presentar una solicitud de revisión judicial ante el Tribunal de Apelaciones, dentro de un término de treinta (30) días contados a partir de la fecha del archivo en autos de la copia de la notificación de la orden o resolución final de la agencia o a partir de la fecha aplicable de las dispuestas en la Sección 3.15 de esta Ley cuando el término para solicitar la revisión judicial haya sido interrumpido mediante la presentación oportuna de una moción de reconsideración.
[...]
Una orden o resolución interlocutoria de una agencia, incluyendo aquellas que se emitan en procesos que se desarrollen por etapas, no serán revisables directamente. La disposición interlocutoria de la agencia podrá ser objeto de un señalamiento de error en el recurso de revisión de la orden o resolución final de la agencia.
[...][25]

## B. Jurisdicción

La jurisdicción es el poder o autoridad que ostentan los foros adjudicativos para considerar y decidir los casos y controversias

---

[21] 3 LPRA sec. 9654.
[22] *J. Exam. Tec. Méd. v. Elías et al.*, 144 DPR 483, 490 (1997).
[23] *Id.*
[24] *Id.*, págs. 490-491.
[25] Sección 4.2 de la Ley Núm. 38-2017 (3 LPRA sec. 9672).

ante su atención.[26] Es norma reiterada que los entes judiciales o administrativos deben ser celosos guardianes de su jurisdicción, ya que no tienen discreción para asumirla si no la hay. Por ello, las cuestiones relativas a la jurisdicción son privilegiadas y, como tal, deben atenderse y resolverse con preferencia y prontitud.

La falta de jurisdicción no es susceptible de ser subsanada. Ante un cuestionamiento de falta de jurisdicción, el juzgador está compelido a auscultarla, toda vez que el planteamiento jurisdiccional incide directamente sobre el poder para adjudicar una controversia. Un dictamen emitido sin jurisdicción es nulo en Derecho y, por lo tanto, inexistente. Por ende, una vez una agencia o un tribunal determina que no tiene jurisdicción para entender en el asunto presentado ante su consideración, procede la inmediata desestimación de la causa[27].

En estos casos, la Regla 83 (B) y (C) del Reglamento del Tribunal de Apelaciones permite la desestimación de un recurso por falta de jurisdicción. Específicamente, dispone que:

(B)    Una parte podrá solicitar en cualquier momento la desestimación de un recurso por los motivos siguientes:

(1)    que el Tribunal de Apelaciones carece de jurisdicción;

[…]

(C)    El Tribunal de Apelaciones, a iniciativa propia, podrá desestimar un recurso de apelación o denegar un auto discrecional por cualesquiera de los motivos consignados en el inciso (B) precedente.[28]

### III. Aplicación del Derecho a los hechos

En su recurso, Genera cuestiona la autoridad del Negociado para denegar la Iniciativa Núm. 8. Entiende que el Negociado usurpó

---

[26] *Beltrán Cintrón v. ELA*, 204 DPR 89, 101 (2020), que cita a *Torres Alvarado v. Madera Atiles*, 202 DPR 495 (2019).

[27] *S.L.G Szendrey-Ramos v. F. Castillo*, 169 DPR 873, 882-883 (2007); *Torres Alvarado v. Madera Atiles*, supra, págs. 499-500; además, *Mun. de San Sebastián v. QMC Telecom*, 190 DPR 652, 660 (2014); *Suffront v. A.A.A.*, 164 DPR 663, 674 (2005).

[28] *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, pág. 109, 215 DPR ___ (2025).

la facultad de supervisión contractual de la Autoridad, según se establece en la Sección 7.1 (c) del Generation OMA. Asegura que con esta iniciativa Genera logró ahorros verificables durante su primer año contractual, que lo hacen acreedor de un incentivo económico de $32.48 millones, además de $15.7 millones en incentivos generados como consecuencia de otras iniciativas de ahorro de costos de combustible aprobadas por el Negociado.

También, expone que el Negociado se excedió en la *Resolución* de 23 de mayo de 2025, al pronunciar que Genera no tiene derecho a recibir ningún incentivo de pago bajo el Generation OMA. Según Genera, esta decisión lo priva de recibir los $32.48 millones que devengó como consecuencia de los ahorros que alcanzó a través de la Iniciativa Núm. 8.

Por su parte, el Negociado asegura que este foro intermedio carece de jurisdicción para atender el recurso presentado, pues la determinación recurrida no constituye una orden o resolución final que resuelva todas las controversias, adjudique los derechos y las obligaciones de partes adversas y conceda los remedios solicitados. Por ende, no es revisable bajo las disposiciones de la Ley 38-2017, la Ley 57-2014 y la Ley 201-2003.

Además, asegura que la reclamación que presenta Genera no es una controversia madura, final, ni apropiada para su adjudicación. En su opinión, se trata de un procedimiento mediante el cual el Negociado se limita a emitir unas recomendaciones para que la Autoridad evalúe y determine si procede o no el pago de los incentivos reclamados. Una vez la Autoridad emita dicha determinación, Genera podrá impugnar la decisión conforme a lo dispuesto en el Generation OMA. Entiende, que en esta etapa del proceso sería prematuro dirimir los asuntos planteados por Genera en su recurso de revisión judicial. Veamos.

Después de una revisión ponderada de las alegaciones de las partes y la totalidad del expediente, resolvemos que carecemos de jurisdicción para intervenir en los méritos del asunto planteado por Genera. Un examen detenido de la *Resolución y Orden* que impugna nos mueve a concluir que, en efecto, no estamos ante una adjudicación final de los derechos y obligaciones de partes contrarias en un proceso adversativo.[29] Como expusimos, este foro intermedio solo puede revisar órdenes y resoluciones finales según definidas por nuestro ordenamiento administrativo.[30] Así, "las decisiones administrativas que no satisfacen este criterio no son revisables judicialmente".[31]

Lo resuelto en la *Resolución y Orden* del 22 de noviembre de 2024 y la *Resolución* del 23 de mayo de 2025, no constituyen una adjudicación final en un procedimiento adversativo. Más bien, estamos ante un proceso de evaluación de un Plan de Optimización de Combustible sometido por Genera que aún no concluye. Así se desprende de la *Resolución y Orden* del 22 de noviembre de 2024 en la que el Negociado expresó lo siguiente:

> The Energy Bureau EXPECTS that Genera will resolve the issues identified for each of these initiatives in this Resolution and Order before an updated FOP is submitted for the Energy Bureau's evaluation and approval. The Energy Bureau has DETERMINED that it will not address the initiatives in the Proposed FOP **that are subject to other open proceedings until those proceedings conclude or result in a requirement for, or the development of, a fuel cost savings method that can be considered as part of an updated FOP.[32]**

Ciertamente, la consideración y sugerencias del Negociado, como parte de un proceso evaluativo para aprobar unas iniciativas de ahorro de combustible no puede estar sujeto a revisión judicial, por no constituir una determinación final en un procedimiento adjudicativo entre partes adversas. Como muy bien expresó el

---

[29] Sección 1.3(g) de la Ley Núm. 38-2017, *supra*; J. *Exam. Tec. Méd. v. Elías et al.*, supra.
[30] *Id.*
[31] *Simpson, Passalacqua v. Quirós, Betances*, 214 DPR 370, 378 (2024).
[32] Énfasis suplido.

Negociado en su *Resolución* del 23 de mayo de 2025: *[t]he proceeding for the evaluation of a proposed FOP is not adjudicative in nature. Rather, it constitutes a non-adversarial, ex parte regulatory process intended to assess the Proposed FOP's compliance with Puerto Rico's energy public policy and its consistency with the terms of the Generation OMA.*

Del propio Artículo 15 del Generation OMA, se desprende cómo se resolverán las disputas entre las partes contratantes. No obstante, aclara que en el supuesto de que Genera no esté de acuerdo con una decisión del Negociado, este deberá ejercer sus derechos conforme lo establece la Ley Núm. 38-2017, *supra*, (LPAU) y la Sección 6.5 (c) de la Ley Núm. 57-2014, *supra*.[33] Queda claro entonces, que para que Genera pueda solicitar la revisión judicial de una orden o resolución emitida por el Negociado esta debe ser final.

Por consiguiente, la controversia presentada por Genera ante este foro intermedio no es revisable, pues se trata de un proceso regulatorio, no adversativo, que aún está pendiente ante la agencia que Genera someta toda la información requerida en el Generation OMA, para la correcta evaluación y aprobación de algunas de las iniciativas de ahorro sometidas.

Por tanto, en mérito de lo anterior, resolvemos desestimar el recurso de epígrafe por falta de jurisdicción.[34]

---

[33] Section 15.1 Scope. Except as otherwise expressly provided in this Agreement, any dispute among the Parties arising out of, relating to or in connection with this Agreement or the existence, interpretation, breach, termination or validity thereof (a "Dispute") shall be resolved in accordance with the procedures set forth in this Article 15 (Dispute Resolution), which shall constitute the sole and exclusive procedures for the resolution of such Disputes (the "Dispute Resolution Procedure"), including as to the validity of any termination or effective date of any termination. Operator (Genera) acknowledges and agrees that Administrator (Autoridad) (or any Designated Person appointed by Administrator) shall be authorized to participate in or act for and on behalf of Owner in any Dispute Resolution Procedure contemplated by this Article 15 (*Dispute Resolution*). For the avoidance of doubt, the Dispute Resolution Procedures set forth in this Agreement shall not apply to any dispute between a Party and PREB (Negociado), which disputes shall be subject to resolution in accordance with Applicable Law. Notwithstanding anything to the contrary herein, in the event that Operator disagrees with a decision of PREB, nothing shall prejudice, limit or otherwise impair Operator's right to exercise its rights pursuant to Act No. 38 of June 30, 2017 and Section 6.5 (c) of Act. 57.

[34] Regla 83 (B) del Reglamento del Tribunal de Apelaciones, *supra*.

### IV. Parte Dispositiva

Por los fundamentos que anteceden, desestimamos la *Solicitud de Revisión de Decisión Administrativa* presentada por Genera.

**Notifíquese inmediatamente.**

Lo acuerda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones